# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

JAMES L. MERRIMON, )
)
      Plaintiff, )
) Civil Action No. 3.08-1137
v. ) Judge Nixon / Knowles
)
MICHAEL ASTRUE, )
Commissioner of Social Security )
)
      Defendant. )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 17. Defendant has filed a Motion for Judgment on the Pleadings and supporting Memorandum of Law, which the undersigned will construe as a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket Nos. 20, 21.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

1

# I. INTRODUCTION

Plaintiff filed his application for DIB on February 7, 2006, and his application for SSI on February 10, 2006, alleging that he had been disabled since August 15, 2005, due to back pain. Docket No. 13, Attachment ("TR"), TR 68-72, 73-79. Plaintiff's applications were denied both initially (TR 50, 52) and upon reconsideration (TR 54, 56). Plaintiff subsequently requested (TR 67) and received (TR 17-20) a hearing. Plaintiff's hearing was conducted on October 4, 2007, by Administrative Law Judge ("ALJ") John P. Garner. TR 29-49. Plaintiff and vocational expert ("VE"), Kenneth N. Anchor, appeared and testified. *Id.*

On December 7, 2007, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 7-16. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since August 15, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: obesity; degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work.

> 6. The claimant is capable of performing past relevant work as assembler, machinist, saw operator, and picker/packer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from August 15, 2005 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

TR 12-16.

On December 20, 2007, Plaintiff timely filed a request for review of the hearing decision. TR 5. On October 24, 2008, the Appeals Council issued a letter declining to review the case (TR 1-4), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the

3

process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that his case must be remanded because he has new and material

6

evidence that must be considered. Docket No. 17. Specifically, Plaintiff underwent an MRI of his lumbar spine that shows degenerative damage, including multiple concentric disc bulges with facet osteoarthritis, one concentric disc bulge with moderately severe biforaminal stenosis, and bilateral L5 pars defect. *Id.* Plaintiff maintains that the disc bulges and degeneration seen on his latest MRI were "completely new" and therefore could not have been presented as evidence before the ALJ. *Id.* Plaintiff also argues that Dr. Julie Stinson-Reynolds completed a Residual Functional Capacity assessment that supports his case that was not in existence at the time of his hearing. *Id.* Accordingly, Plaintiff maintains that, pursuant to sentence six of 42 U.S.C. § 405(g), the Commissioner's decision should be remanded. *Id.*

Sentence six of § 405(g) states as follows:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good case for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. §§ 405(g), 1383(c)(3).

"It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Sizemore v. Secretary*, 865 F.2d 709, 711 (6th Cir. 1988) (quoting *Oliver v. Secretary*, 804 F.2d 964, 966 (6th Cir. 1986)). A Sentence Six remand does not require the court to rule on the correctness of the administrative determination. *Faucher v. Secretary*, 17 F.3d 171, 175 (6th Cir. 1994). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative

7

proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.* (quoting *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163). A Sentence Six remand is thus considered a pre-judgment remand. *Id.*

## 1. New and Material Evidence

As has been noted, Plaintiff contends that his case must be remanded pursuant to Sentence Six of 42 U.S.C. § 405(g) because his February 2008 MRI and the Residual Functional Capacity report completed by Dr. Julie Stinson-Reynolds constitute new and material evidence that must be considered. Docket No. 17.

Remand for consideration of new and material evidence is appropriate only when the claimant shows that: (1) new material evidence is available; and (2) there is good cause for the failure to incorporate such evidence into the prior proceeding. *Willis v. Secretary*, 727 F.2d 551, 554 (6th Cir. 1984).

"In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate, 1) that the new evidence pertains to the claimant's condition prior to the date of the ALJ's hearing decision (*Oliver v. Secretary*, 804 F.2d 964, 966 (6th Cir. 1984); and 2) that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" (*Sizemore v. Secretary*, 865 F.2d 709, 711 (6th Cir. 1988) (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980))).

## a. February 2008 MRI

Plaintiff contends that his February 2008 MRI results are material, because they did not exist at the time the ALJ rendered his decision, as he could not obtain the MRI until after he received TennCare. Docket No. 17. Plaintiff further contends that the degeneration seen in the

February 2008 MRI relates directly to the back problems that he asserted as the basis for his disability claims. *Id.*

Defendant responds that Plaintiff's February 2008 MRI was completed more than two months after the relevant date of the ALJ's decision and adds little to what was already in the record. Docket No. 21.

Plaintiff's February 2008 MRI revealed as follows:

> L1-2: Minimal concentric dis bulge with facet osteoarthritis. No central canal or foraminal narrowing.
>
> L2-3: Concentric disc bulge and facet osteoarthritis. No central canal or foraminal narrowing.
>
> L3-4: Concentric disc bulge and mild facet osteoarthritis. Mild biforaminal stenosis worse on the left. Mild central canal narrowing.
>
> L4-5: No significant disc pathology. Mild facet osteoarthritis. Minimal biforaminal stenosis without significant central canal narrowing.
>
> L5-S1: Bilateral L5 pars defects with grade I anterolisthesis of L5 over S1. Concentric disc bulge with moderately severe biforaminal stenosis. No central canal narrowing.
>
> Retroperitonoal soft tissues appear within normal limits.
>
> IMPRESSION:
> 1. Degenerative changes of the lumbar spine as detailed above. Findings are most severe at L5-S1 where there are bilateral L5 pars defects, grade I anterolisthesis of L5 over S1, and moderately severe biforaminal stenosis.

TR 28.

On June 6, 2005, Plaintiff saw Dr. Kevin J. Bonner, of Baptist Hospital, for a work-

related back injury that occurred on June 3, 2005.[2] TR 161-163. Dr. Bonner conducted an x-ray examination of Plaintiff's lumbar spine, which revealed an 8 mm anterolisthesis of L5 on S1 with pars defects. TR 163. Dr. Bonner noted that the pars defects may have been old, and he observed that "[n]o definite acute fracture or other abnormality" could be seen. *Id.*

Plaintiff also saw Dr. Robert E. Clendenin, III, of Tennessee Orthopaedic Alliance, for the work-related back injury that occurred on June 3, 2005. TR 14, 181. Dr. Clendenin noted that Plaintiff indicated that physical therapy made his back pain worse.[3] TR 181. Upon physical examination, Plaintiff had "superficial tenderness over the lumbar spine." TR 14, 181. Dr. Clendenin diagnosed Plaintiff with acute lumbar strain, ordered an MRI, and prescribed medication. TR 181.

On July 1, 2005, Plaintiff saw Dr. Clendenin for an MRI of his lumbar spine. TR 180. The MRI revealed that T12-L1 through L4-5 were normal. *Id.* Dr. Clendenin noted that L5-S1 had "[m]ild anterolisthesis . . ., bilateral pars articularis defects, degenerative changes of the posterior elements, broad based disc bulge with right central annular fissuring, [and] advanced narrowing of both neural foramina, [the] right greater than [the] left." TR 14, 180. In an August 2005 follow-up, Dr. Clendenin observed that the July 1, 2005 MRI "was rather unremarkable,

---

[2] Plaintiff also saw Dr. Daniel S. Burrus on May 17, 2000, for a work-related back injury. Dr. Burrus opined that Plaintiff had a normal gait and no significant loss of range of motion. Plaintiff received an x-ray examination, the results of which were normal, except for spondylolisthesis at L5-S1. TR. 184. Dr. Burrus saw Plaintiff for a follow-up examination on June 14, 2000. He noted that Plaintiff reported some improvement in his pain with physical therapy and recommended that Plaintiff continue physical therapy treatments. TR 181-182.

[3] Plaintiff denied that he suffered from any previous back injuries. TR 181. Dr. Clendenin's office records indicated, however, that Plaintiff saw Dr. Burrus in 2000 for a work-related back injury. *Id.*

10

but there [was] some abnormality at L5-S1." TR 179. Dr. Clendenin referred Plaintiff for surgical evaluation since he alleged that his back pain was not improving. TR 14, 179.

Plaintiff saw Dr. Burrus on August 14, 2005, for a surgical consultation. TR 14, 176-178. Dr. Burrus noted that there was "a great deal of local tenderness in his lumbar spine with light palpation." TR 176. After reviewing Plaintiff's July 1st MRI, Dr. Burrus opined that the only abnormality was a Grade 1 spondylolisthesis at L5-S1, which was not related to Plaintiff's back pain. TR 14, 176. Dr. Burrus did not find Plaintiff to be a candidate for surgical intervention and suggested that he return to regular work duty. TR 14, 176-177.

Plaintiff visited Dr. Walter W. Wheelhouse on December 19, 2005, for an Independent Medical Evaluation. TR 15, 186-189. Dr. Wheelhouse reviewed Plaintiff's previous medical records, including the July 1st MRI, and conducted an independent physical examination. *Id.* Upon physical examination, Dr. Wheelhouse found "[t]enderness and muscle spasm and guarding in the lumbosacral spine greatest in the midline at L1-2 and L5-S1." TR 188. Dr. Wheelhouse diagnosed Plaintiff with "[m]echanical low back pain and spondylolisthesis L5-S1 with posterior disc protrusion at L5-S1 and radiculopathy." TR 15, 188.

On March 27, 2006, Plaintiff saw consultative examiner Dr. Bruce Davis. TR 15, 190. Dr. Davis opined that Plaintiff suffered from midline lower back tenderness, pain in slowly changing positions, painful gait maneuvers, and normal reflexes with no atrophy. *Id.*

As can be seen, all of the physicians' examinations revealed that Plaintiff suffered from back pain and some degree of abnormality at L5-S1. TR 14-15, 176, 179, 181, 188, 190. Moreover, comparing the radiologists' impressions from Plaintiff's MRIs, the radiologists identified Plaintiff's Grade 1 anterolisthesis of L5-S1, degenerative changes and narrowing or

11

stenosis in their findings. *See* TR 28, 180. Accordingly, the ALJ considered these findings.

Although the February 2008 MRI revealed some abnormalities with L1-2 through L4-5 that were not revealed in earlier MRIs, a worsening of symptoms after the ALJ hearing is not an appropriate cause for remand. *Sizemore v. Secretary*, 865 F.2d 709 (6th Cir. 1988). The *Sizemore* court reasoned that:

> Evidence which reflected the applicant's aggravated or deteriorated condition is not relevant because such evidence does not demonstrate the point in time that the disability itself began. Reviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition . . . . If in fact the claimant's condition had seriously degenerated, the appropriate remedy would have been to initiate a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment.

*Id.* at 712; *see also Wyatt v. Secretary*, 974 F.2d 680, 685 (6th Cir. 1992) ("Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial.").

**b. Dr. Stinson-Reynolds' RFC Assessment**

Plaintiff contends that a RFC assessment completed on March 7, 2008, by Dr. Julie Stinson-Reynolds constitutes new and material evidence, such that remand is warranted. Docket No. 17.

In her March 7th RFC assessement, Dr. Stinson-Reynolds opined that Plaintiff could sit, stand, and walk for two to three hours total in an eight-hour day, frequently lift up to eight pounds, occasionally lift up to nineteen pounds, and never lift anything over twenty pounds. TR 26. She further opined that Plaintiff could frequently carry up to nine pounds, occasionally carry up to nineteen pounds, never carry over twenty pounds, and never crawl or climb. TR 27. Dr. Stinson-Reynolds also opined that Plaintiff's pain would moderately-severely to severely restrict

12

his ability to function. *Id.*

Dr. Stinson-Reynolds based her medical evaluation on Plaintiff's February 2008 MRI, the results of which are discussed *supra*. Docket. No. 17. Dr. Stinson-Reynolds' opinion is, however, inconsistent with the other objective medical evidence of Record, and is unaccompanied by objective findings. Dr. Stinson Reynolds' RFC assessment is further inconsistent with exam findings from Plaintiff's treating physicians, and with Plaintiff's reported daily activities.

The Record demonstrates that Plaintiff's treating and examining physicians found that Plaintiff had mild degenerative changes at L5-S1, a normal gait, no significant range of motion loss, negative straight leg raises, and full motor strength. TR 163, 173, 177, 181, 184, 188, 190. Plaintiff was repeatedly diagnosed with lumbar strain. TR 173, 181, 184. Plaintiff used Tylenol and Ibuprofen to relieve his pain. TR 187. Plaintiff's MRIs showed Grade 1 anterolisthesis of L5-S1 and some degenerative changes. TR 163, 177, 179. Plaintiff was deemed not to be a candidate for surgical intervention. TR 177.

Moreover, the ALJ presented, *inter alia*, the State Agency physicians' opined limitations and abilities of Plaintiff to the VE at the hearing. TR 46-47. The VE testified that, considering the proffered limitations and abilities, Plaintiff would be able to return to his past relevant work. *Id.*

Additionally, Plaintiff reported grocery shopping, looking after children, driving, caring for himself, attending college classes, studying, working on the computer, applying for jobs, reading, and spending time with family and friends. TR 34-38.

The record is replete with doctors' evaluations, medical assessments, test results, and the like, all of which constitute "substantial evidence" to support the conclusion reached.

As explained above, the ALJ's decision must be supported by "substantial evidence." "Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion" (*Her*, 203 F.3d at 389 (*citing Richardson*, 402 U.S. at 401)), and has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance" (*Bell*, 105 F.3d at 245 (*citing Consolidated Edison Co.,* 305 U.S. at 229)).

Even if the February 2008 MRI and Dr. Stinson-Reynolds' RFC report had been part of the record before the ALJ, "substantial evidence" supports the ALJ's findings and inferences. The ALJ's decision demonstrates that he carefully considered the testimony of both Plaintiff and the VE, observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision. Additionally, the Appeals Council reviewed the February 2008 MRI and Dr. Stinson-Reynolds' RFC report, as well as the record as a whole, and expressly determined that the information contained in the MRI and RFC report did not warrant changing the ALJ's decision. *See* TR 4. Thus, there is no "reasonable probability that the Secretary would have reached a different disposition of the disability claim" if the February 2008 MRI and Dr. Stinson-Reynolds' RFC report had been part of the record before the ALJ.

Moreover, Plaintiff has not established "good cause" for failing to submit evidence of the February 2008 MRI and Dr. Stinson-Reynolds' RFC report to the ALJ during the hearing. Plaintiff argues that the new evidence did not exist at the ALJ hearing because Plaintiff lacked medical insurance to pay for the medical examinations. Docket No. 17. "[I]n order to 'show good cause,' the [plaintiff] must give a valid reason for failing to obtain evidence prior to the

hearing." *Cranfield v. Commissioner*, 79 Fed. Appx. 852, 859 (6th Cir. 2003) (quoting *Willis v. Secretary*, 727 F.2d at 554).

The ALJ rendered his unfavorable decision against Plaintiff on December 7, 2007. TR 7-17. Plaintiff claimed to have been awarded TennCare medical insurance in December 2007, around the same time as the ALJ's decision. Docket No. 17. Since Plaintiff was expecting to receive insurance to pay for the new MRI around the same time as the ALJ hearing, he could have petitioned for the record to remain open, for a reasonable time, until he could produce the new MRI and Dr. Stinson-Reynolds' report. *Willis*, 727 F.2d at 554 (noting that plaintiff's counsel could have sought "to have the record remain open until such time as other evidence could be made a part of the record"). Plaintiff could have also petitioned for a continuance of the hearing to allow more time to produce the new medical evidence. *See Cranfield*, 79 Fed. Appx. at 859 (rejecting plaintiff's good cause argument because she could have sought a continuance if she needed more time to produce her medical records). Plaintiff, unfortunately, did not pursue either of these avenues.

Plaintiff has failed to demonstrate either that the new medical evidence was material or that there was good cause for his failure to present the new evidence at the administrative hearing. Accordingly, remand pursuant to Sentence Six of 42 U.S.C. § 405(g) is not warranted.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14)

15

days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

$\hspace{4cm}$ _____
$\hspace{4cm}$ E. CLIFTON KNOWLES
$\hspace{4cm}$ United States Magistrate Judge